Case 3:19-cv-00285   Document 85   Filed on 07/19/21 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
July 19, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

Nos. 3:19-cv-280/285/312

Steven Ledermann, Curtis Green & Daniel Saldana,
*Plaintiffs*,

v.

United States of America,
*Defendant*.

## MEMORANDUM OPINION AND ORDER ENTERING FINDINGS OF FACT AND CONCLUSIONS OF LAW

Jeffrey Vincent Brown, United States District Judge.

In these three cases, the plaintiffs allege that a government dental provider failed to properly sterilize its equipment and infected them with Hepatitis C. The court consolidated the cases for trial and tried them to the bench. Based on the pleadings, the evidence adduced at trial, the parties' arguments and briefing, and the applicable law, the court submits these findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.[1]

---

[1] Any findings of fact that are also, or only, conclusions of law are so deemed, and any conclusions of law that are also, or only, findings of fact are likewise so deemed.

1

#### FINDINGS OF FACT

Plaintiffs Steven Ledermann, Curtis Green, and Daniel Saldana all received invasive dental treatment at Coastal Health and Wellness, a pair of federally funded dental clinics in Texas City and Galveston. Ledermann's dental work included an attempted surgical extraction of several teeth at the Texas City clinic in March and April of 2016. Green's treatment included scaling, polishing, and removal of an erupted tooth during three separate visits to the Texas City clinic in June and August of 2016. And Saldana's work included extractions of teeth in two separate visits at the Galveston clinic in October and December of 2015.

In February 2018, more than a year after the plaintiffs' appointments, the Joint Commission on Accreditation of Healthcare Organizations[2] paid each clinic an unannounced accreditation visit. Immediately following the visits, the Joint Commission announced that the clinics were not meeting accreditation standards. Many of the clinics' failures were administrative, but some pointed to possible lapses in infection control. The Joint Commission attributed these shortcomings to faulty leadership and training of the clinics' employees. The failures included neglecting to

---

[2] The Joint Commission is a nonprofit organization that accredits healthcare programs in the United States, and its guidelines and evaluations aim to improve patient safety.

properly document the maintenance of sterilization equipment and inappropriately administering the spore testing of dental instruments.[3]

Upon learning of the Joint Commission's report, the Local Health Authority for Galveston County, Dr. Phillip Keiser, closed the clinics and began an investigation based on the Joint Commission's findings. Concerned that the possible sterilization lapses may have exposed patients to blood-borne pathogens, Dr. Keiser directed the Galveston County Health District to contact previous patients, inform them of the situation, and invite them to be tested for free. In a letter the district sent to patients, it said that though no infections had yet been linked to the clinics, it recommended precautionary testing "for Hepatitis B, Hepatitis C, and HIV."

The letter went to patients who had visited the clinics between March 1, 2015, and February 13, 2018. Dr. Keiser chose the cut-off date of March 2015 because the clinics had passed their Joint Commission inspection in 2015 with no issues. The three plaintiffs—Ledermann, Green, and Saldana—were among the 9,000 patients who received the letter.

---

[3] However, as the United States' expert witness, Dr. Richard Hamill, notes, the Joint Commission's report did not document any "gross contamination of instruments," which would be relevant to whether there were any "means of transmitting the disease."

Following Dr. Keiser's investigation, the clinics made improvements that proved successful. A follow-up inspection by the Joint Commission found full compliance. Several months after closing, the clinics reopened.

The three plaintiffs were among several previous patients who tested positive for—and then were cured of—Hepatitis C. Blaming their infections on the clinics, which are federally funded and part of the Public Health Service, the plaintiffs first exhausted their administrative remedies, then sued the United States for medical malpractice under the Federal Tort Claims Act.

## Conclusions of Law

The United States is immune from suit except in the manner and as far as it has waived sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 477 (1994). The Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, waives sovereign immunity and allows actions against the United States for personal injury caused by a government employee's negligence "under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (citing 28 U.S.C. §§ 1346(b)(1), 2674).

"State law controls liability for medical malpractice." *Id.* Under Texas law, plaintiffs in medical-malpractice actions must prove four elements: (1) a duty to

comply with a specific standard of care; (2) breach of the standard of care; (3) an injury; and (4) a causal connection between the breach and the injury. *Coronel v. Providence Imaging Consultants, P.A.*, 484 S.W.3d 635, 638 (Tex. App.—El Paso 2016, pet. denied). For the fourth element, plaintiffs must show that the alleged negligent act or omission proximately caused their harm, which means the negligence was "a substantial factor in bringing about the harm, and without which the harm would not have occurred." *Archer v. Warren*, 118 S.W.3d 779, 782 (Tex. App.—Amarillo 2003, no pet.).

The plaintiffs have failed to prove causation. Given their risk factors, the time at which they visited the clinics, and the evidence of their later-staged infections, the plaintiffs have shown at best a temporal association. That is not enough.

To start, all three plaintiffs had common risk factors for Hepatitis C long before they visited the clinics. Ledermann had used intravenous drugs, smoked marijuana, pierced his ears, been tattooed, visited hospitals in third-world countries, and contracted a pair of sexually transmitted diseases. Green's history included a knee surgery, caring for a dialysis patient (his sister), using intranasal cocaine, and having a tooth pulled in a county-jail infirmary. And Saldana's history included treatment for a gunshot wound to the head, a shoulder arthroscopy, and epidural steroid injections by needle.

To be sure, some of these events in the plaintiffs' histories occurred long before they visited the clinics.[4] But there was also a lot of time between their dental procedures and their positive test results. The Joint Commission's inspection occurred one year and ten months after Ledermann's last appointment, one year and six months after Green's, and two years and two months after Saldana's. Their visits were in 2015 and 2016, but the sterilization issues were discovered in 2018, and it's unclear how longstanding those issues were. Indeed, the clinics passed their Joint Commission inspection in 2015, and Dr. Keiser testified that his investigation concerned things as they stood in 2018, not 2015 or 2016. As the United States' causation expert explained, there was no evidence of the clinics' conditions when the plaintiffs visited, making the time jump "implausible."

Even more, evidence of the plaintiffs' liver health further undermines their case for causation. Records show that Ledermann has cirrhosis—which can be the end stage of a chronic Hepatitis C infection, taking ten to fifteen years to develop. Evidence shows that his co-plaintiffs' infections were also longstanding. Green and Saldana had F3 and F4 fibrosis scores,[5] respectively, which means they had probably

---

[4] The remoteness of some of the events in the plaintiffs' histories, however, does not necessarily strengthen their case for proximate causation. As the court states below, the evidence suggests the plaintiffs' Hepatitis C infections were longstanding.

[5] Fibrosis scores range from 0 to 4. A score of F0 signifies no signs of fibrosis, and a score of F4 reveals severe cirrhosis.

contracted Hepatitis C at least ten years before. The advanced stages of the plaintiffs' liver ailments make it unlikely that they were infected with Hepatitis C as late as 2015 or 2016.

In short, no plaintiff has met his burden of showing that, "to a reasonable degree of medical probability," the clinics' negligence caused his injuries. *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010). Instead, they have offered just "a mere suspicion of causation, and that is not enough." *Id.* at 535.

\* \* \*

The three plaintiffs—Steven Ledermann, Curtis Green, and Daniel Saldana—have failed to prove that Coastal Health and Wellness's negligence proximately caused their injuries. The court rules that they take nothing.

Signed on Galveston Island this 19th day of July, 2021.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

7